HENRY J. BOOKMAN, Appellant, *v.* LOUIS R. STEGMAN, Sheriff, etc., Respondent.

*Court of Appeals, March 22, 1887.*

Reversing same case, 40 Hun, 636, mem.

*Evidence. Hearsay.*—A conclusion reached by a judicial officer upon *ex parte* affidavits, to the effect that they contained sufficient evidence to prove an indebtedness from one party to another and the perpetration of frauds by the debtor in incurring it, is not competent evidence, in an action between third parties, to establish either the fact of such debt or of such frauds. Such proof is mere hearsay.

Appeal from a judgment of the general term of the supreme court, affirming judgment and order denying a new trial.

*William J. Gaynor*, for appellant.

*James Troy*, for respondent.

RUGER, Ch. J.—The plaintiff brought an action of claim and delivery to recover possession of a quantity of liquors, etc., of the value of $3,500, which he alleged the defendant had wrongfully taken from him and wrongfully detained. The answer justified the taking of the property, as sheriff of Kings county, by virtue of two several attachments issued out of the supreme court, respectively commenced by Thomas & Thomas against Midas & Larson, and Henriques against Midas, and claimed that the same was the property of Midas and not of the plaintiff. The evidence upon the trial was uncontradicted, to the effect that the property in question, on or about December 18, 1884, was taken by the defendant from premises on the corner of Atlantic and

Georgia Avenues in East New York, in which the plaintiff was carrying on the business of selling wines, liquors, etc., at wholesale and retail and consisted of his stock in trade.

It also appeared that the plaintiff was then in possession of said premises, and had been since October 1, 1884, under a lease standing in his own name and paying rent therefor, and that his name was conspicuously painted upon the outer wall of the building, and several smaller signs were displayed in different parts of the store, and he was apparently having exclusive control and management of the business.

It further appeared that about a year and a half previous to this time one Bernhard Midas, in connection with a much larger establishment situated in another part of the town, had conducted this store; but desiring to remove his business wholly to Brooklyn, he sold its good will and contents and assigned his lease to the plaintiff and delivered possession thereof, and about the first day of November thereafter established himself in the liquor selling business in Brooklyn.

It was further proved by the plaintiff that the purchase-price of said stock, etc., was $3,316.90, and that he paid therefor by $1,000 in cash; canceling a debt owing him by said Midas of $1,000, and delivering his own note for the balance, $1,316.90, indorsed by his father, a responsible man.

It also appeared that between the middle of October and the twelfth day of November thereafter, the plaintiff bought other liquors of Midas, for the use of his said business, to the amount of nearly $6,000, $2,500 of which was paid by the promissory note of third parties, and the balance by the notes of the plaintiff on four months' time. These notes were all subsequently paid at maturity at the banks where they were made payable, except a small note which had not become due on the day of trial.

The ground upon which the defense was conducted was the claim that each of the sales from Midas to the plaintiff was fictitious—made with intent to defraud the creditors of

Midas—and that the liquors themselves continued to remain the property of Midas.

Assuming for the present that the defendant could, without confessing and avoiding the allegations of the complaint, give evidence of fraud which would avoid the transfers from Midas to plaintiff, we are of the opinion that the evidence given for that purpose was very weak and unsatisfactory. No direct proof was offered of any arrangement between Midas and plaintiff that Midas should retain an interest in the property sold, and no circumstance transpired after the sale tending to show that he exercised any control over the same or received any of the proceeds of the business.

Aside from the fact that plaintiff was an adopted child and nephew of Midas, generally living in his family, and superintended the store in question while he carried it on, and some slight discrepancies in the evidence of the plaintiff, not a fact appeared casting suspicion upon the transactions or tending to show that Midas was not perfectly solvent and able to respond to all of his engagements, not only at the time of making the sales, but also at the date of the attachment, except the fact that about the middle of December the sheriff received some fifteen or sixteen attachments from as many different parties, amounting to about $72,000, against the property of Midas, issued upon the ground of frauds alleged to have been committed by him, and commanding the sheriff to attach his property.

This evidence was testified to by the under-sheriff, claiming to hold the several attachments in his hands and speaking therefrom, and was objected to by the plaintiff. They were offered, and admitted, upon the ground that they bore upon the alleged fraud of Midas ; and the plaintiff excepted to the ruling.

The defendant also offered the several affidavits upon which the respective attachments were founded, but, upon objection being made by the plaintiff, they were withdrawn.

The attachments were, however, allowed to remain as evidence in the case, purporting to prove that they were each issued on account of alleged frauds of Midas, and apparently showing an indebtedness on his part of $72,000 to the several plaintiffs in such attachments. These attachments did not comprise the process under which the defendant justified the seizure of the property, but were claimed to be other process in his hands at the time thereof.

It cannot be doubted but that this evidence was very material upon the issue presented by the defendant, and if it was improperly admitted had a very injurious effect upon the result of the trial for the plaintiff.

We are clearly·of the opinion that this evidence was incompetent for any purpose. A conclusion reached by a judicial officer upon *ex parte* affidavits, to the effect that they contained sufficient evidence to prove an indebtedness from one party to another and the perpetration. of frauds by the debtor in incurring it, is not competent evidence to establish either the fact of such debt or of such frauds, in an action between third parties.

Such proof derives no force from the judicial order, and is merely hearsay, having no greater effect, as proof of the facts stated therein, than *ex parte* affidavits made under any other circumstances.

No statute makes them evidence and no rule of common-law evidence justifies their admission. People *v.* Walsh, 87 N. Y. 485.

The fact that a judge has awarded process thereon, constitutes no such adjudication as renders them evidence of the facts stated therein.

For this error the judgment should be reversed and a new trial ordered, with costs ·to abide event.

All concur.